**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| XUAN LIU, | |
| Plaintiff, | Civil Action No.: 2:26-cv-375 |
| v. | Honorable Judge Christy Criswell Wiegand |
| | JURY TRIAL DEMANDED |
| SCHEDULE A DEFENDANTS, | |
| Defendants. | |

## DECLARATION OF GE (LINDA) LEI

I, Ge (Linda) Lei, hereby declare, and state as follows:

1. I am an attorney at law, duly admitted to practice before the Courts of the State of Illinois and the United States District Court for the Western District of Pennsylvania. I am the attorney for Plaintiff. Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows. I am submitting this Declaration in Support of Plaintiff's *Ex Parte* Motion for Temporary Restraining Order and Other Relief ("Plaintiff's Motion").

2. Exhibit A to Plaintiff's Complaint contains the true and correct registration of Plaintiff's Copyright VA 2-444-503 ("Plaintiff's Copyright").

3. Exhibits B.1-B.3 to Plaintiff's Complaint contains a true and correct comparison chart showing Plaintiff's Copyright and Defendants' Infringing Products, and true and correct screen captures of Defendants' infringing listing pages, showing Defendants standing ready, willing, and able to sell and ship Infringing Products to Pennsylvania.

1

4. Exhibit C to Plaintiff's Complaint contains true and correct screenshots of research regarding the seller aliases' identities, if available.

5. Exhibit D to Plaintiff's Complaint contains a true and correct publication of "Alibaba, Amazon, and Counterfeiting in the Age of the Internet" by Daniel C.K. Chow.

6. Exhibit E to Plaintiff's Complaint contains true and correct publications by the U.S. Department of Homeland Security.

7. I am an experienced attorney in online infringement and counterfeiting cases.

### SELLER ALIAS AND FICTITOUS INFORMATION

8. In my experience, the true owners or operators of seller aliases – appearing like Defendants in this case - have the ability to – and do - create multiple seller aliases.

9. Exhibits A to Plaintiff's Memorandum in Support of Plaintiff's Motion contains true and correct screenshots of information and pages on sellerdefense.cn.

10. As seen in Exhibit A to Plaintiff's Memorandum in Support of Plaintiff's Motion, and based on my previous experience and other aliases' discovery, many seller aliases utilize chat rooms and websites like sellerdefense.cn to spot oncoming lawsuits, avoid infringement, and engage in other activities, such as coordination, before appearing in a lawsuit.

11. I have experience in several cases that have appeared on sellerdefense.cn. In some instances, all the website needs is the name of an individual, blogging to warn aliases by guessing which intellectual property is at issue based on the name of the plaintiff. In some cases, I have experienced aliases appearing in a sealed case before even being served with notice of the lawsuit.

12. Based on my experience, the seller names and addresses (if listed) on a marketplace platform by a foreign alias are generally fictitious in nature.

13. Upon information and belief, Defendants have utilized Amazon and other marketplace platforms through a desire to remain anonymous to evade Plaintiff's attempts to police its intellectual property rights and the authority of this Court.

14. For example, in general, I have researched many seller alias names and corresponding addresses from many cases. In the vast majority of these instances, the listed names do not correspond to any real or identifiable entity. Further, in the vast majority of these instances, the addresses do not even correspond to real, corresponding entities.

15. In particular, based on the limited available information for Defendants, Defendants appear to be operating out of the nation of China or other foreign jurisdiction. Based on my research, the seller aliases appear to list fictitious addresses (if available), where a Google search does not appear to return a reliable, corresponding business entity for such addresses that matches the seller alias names themselves, respectively. *See* Exhibit C to Plaintiff's Complaint.

16. Based on my experience, the email addresses linked to the aliases appears to be one of the only – if not the only – accurate contact information provided by the creator of the aliases. It is my understanding that the email address must be accurate for the aliases to continue operation and link to their financial account on the platform, and as a result, must be maintained and monitored by the registrants of these aliases.

**MANIPULATION OF DATA AND ASINS/WEBPAGES UPON NOTICE**

17. I have experienced aliases manipulating data, ASINs, and webpages upon notice of a lawsuit. For example, I have witnessed aliases submitting product listing pages which detailed a Date First Available in an attempt to improperly invalidate a patent under 35 USC 102/103. However, the original infringing evidence submitted to the Court by the plaintiff for the respective aliases had either no Date First Available listed or a different Date First Available listed. This suggests seller aliases – like Defendants - have the ability to quickly and easily change important data, including but not limited to titles, descriptions, images, videos, Dates First Available, and other product listing details upon notice of a lawsuit – and even after in some cases.

18. Again, for example, in one particular case, I provided a detailed comparison of a large number of seller aliases' listing pages before and after a TRO was entered. The comparison revealed most – if not all - aliases deleted evidence and/or changed significant aspects of their listing, including titles, Date First Available, and even the images (where copyright images were at issue), upon notice of the lawsuit.

19. Again, for example, in one particular case, I experienced an alias subject to a Preliminary Injunction Order appear to transfer its URL to a different alias. In that instance, a URL linked to a specific ASIN and product for a particular alias. However, thereafter, the URL remained active, appearing nearly identical, but listed a different alias as the seller.

20. Again, for example, in one particulate case, I experienced many seller aliases subject to a Preliminary Injunction Order appear to create dozens of new webpages and ASINs to continue selling products identical or substantially similar to the infringing products at issue.

**DEFENDANTS WILL TRANSFER ALL ASSETS AND DEFAULT UPON NOTICE**

21. Based on my experience in cases that have been denied a TRO and/or asset freeze, the vast majority of aliases have defaulted, where little to no damages can be collected from them to satisfy the court's final order. It is presumed the aliases drained their account upon notice, simply creating a new alias.

22. As described above, seller aliases like Defendants can quickly and easily make new seller aliases. In my opinion, and based on years of experience, without an asset freeze prior to notice, seller aliases – like Defendants – are simply inclined to default, facing no consequences, and create new seller aliases – at likely minimal cost - for their continued infringement and counterfeiting.

23. For example, in one particular lawsuit, I experienced one alias, who was active in the lawsuit, be removed from an injunction and asset freeze based mainly on a procedural argument. Shortly thereafter, the attorney of record for the alias withdrew, and the alias has not participated in the lawsuit since. It is presumed the financial account has been drained, and the alias will default with little to no compensation available for the plaintiff.

**OTHER ATTORNEY EXPERIENCE**

24. Exhibit B to Plaintiff's Memorandum in Support of Plaintiff's Motion contains a true and correct Declaration of Stanley D. Ference III submitted in *Toka, LLC v. Milesstore, et al*. (Case No. 25-cv-593) (W.D. Pa.) (ECF 18-1). Atty. Ference III provides excellent detail into further personal experience, along with other attorneys' personal experience, in dealing with seller aliases – like Defendants. This information appears to corroborate and confirm my personal experiences with seller aliases.

25. Exhibit C to Plaintiff's Memorandum in Support of Plaintiff's Motion contains a true and correct Declaration of Justin R. Gaudio submitted in *Universal City Studios LLC v. DPDC Expresshub* (Case No. 25-cv-07492) (N.D. Ill.) (ECF 22). Atty. Gaudio provides excellent detail into further personal experience in dealing with seller aliases – like Defendants – and their respective operations, addresses, and emails.

### ENTRY OF A TEMPORARY RESTRAINING ORDER

26. I, or someone acting under my direction, has reviewed Exhibits B.1-B.3 to Plaintiff's Complaint and am of the opinion that Defendants infringe Plaintiff's Copyright.

27. In preparation for the filing of this Motion, I have reviewed numerous cases from this and other Districts involving online infringement through online marketplaces such as Amazon.com, eBay.com, and Walmart. Many of the plaintiffs in these cases have sought and been granted an *ex parte* restraining order and asset freeze in order to stop infringers from simply relocating their ill-gotten funds.

28. Pursuant to entry of the TRO and subsequent PI, Plaintiff will contact Amazon.com and other marketplaces, to restrain accounts associated with the Defendant Internet Stores. As soon as each third party confirms the TRO, including asset restraint, has been implemented, and provided Plaintiff with corresponding contact information, Plaintiff will take swift action to serve Defendants with notice via their corresponding email(s) and unseal any necessary, sealed documents.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on the 1st day of April 2026, in Chicago, IL, United States.

Respectfully submitted,


/s/ Ge (Linda) Lei
Ge (Linda) Lei