**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **XUAN LIU,** Plaintiff, v. **SCHEDULE A DEFENDANTS,** Defendants. | Civil Action No.: 2:26-cv-375<br>Honorable Judge Christy Criswell Wiegand<br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION**

Plaintiff, Xuan Liu ("Plaintiff"), submits the following memorandum in support of its Motion for Default Judgment and Permanent Injunction under Fed. R. Civ. P. 55, against the Defendants identified in Schedule A to the Complaint who have failed to respond or otherwise plead or have not been dismissed ("Defaulting Defendants", as attached as Schedule A to the Proposed Order) based on Plaintiff's action for copyright infringement pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101 et seq.

## I. INTRODUCTION

Plaintiff respectfully requests this Court to grant a default judgment against the Defaulting Defendants pursuant to Fed. R. Civ. P. 55, awarding relief to Plaintiff. Defendants were properly served, as per this Court's Order authorizing service by alternative means, on April 20, 2026. *See* Dkt. No. 32. Despite this, the Defaulting Defendants failed to file an answer to Plaintiff's Complaint, and this Court should now grant a default judgment.

## II. STATEMENT OF FACTS

1. Plaintiff Xuan Liu is an accomplished designer and visual artist based in Maoming City, China, with formal academic training in design. His expertise is evidenced by participation in curated art exhibitions and a proven record of commercial sales. Plaintiff's creative practice focuses on the sophisticated fusion of functional design and aesthetic innovation. *See* Plaintiff's Complaint at ¶ ¶ 4–6.

2. Plaintiff is the sole owner of United States copyright Reg. No. VA 2-444-503 (hereinafter "Plaintiff's Copyright" or "Copyright-in-Suit"), a 2D artistic work created in 2020 and registered with the U.S. Copyright Office. *See Id*. at ¶ ¶ 7–10; Exhibit A thereto.

3. Plaintiff spent significant time and resources on advertising or otherwise promoting the Plaintiff's Copyright and products thereof. Since 2020, Plaintiff has made significant financial investments in the development, protection, and promotion of Plaintiff's Copyright, including creation-related expenses, professional equipment, copyright registration, and digital marketing efforts. *See Id*. at ¶ ¶ 11–13.

4. Plaintiff's target customers for products incorporating Plaintiff's Copyright include art collectors, home décor consumers, cultural product enthusiasts, and faith-based communities. Plaintiff's Copyright has gradually gained recognition for its distinctive elements, design, and features, and as a result, Plaintiff's Copyright and the related products have come to be regarded by certain consumers as quality works originating from Plaintiff. *See Id*. at ¶ ¶ 15, 18.

5. Plaintiff invests substantial resources in Plaintiff's Copyright and corresponding brand development, enhancing brand and product influence through marketing and advertising. Plaintiff also continually allocates resources to update his creative portfolio and integrate customer feedback to maintain the relevance and quality of his offerings. Plaintiff's Copyright has become known from its unique aspects, originality, design, and features, and as such, Plaintiff's Copyright and the respective products have become recognized by consumers as quality works sourced from

Plaintiff. Over time, Plaintiff's Copyright and the respective products gained recognition, resulting in Defendants copying the Plaintiff's Copyright. *See* Plaintiff's Complaint at ¶ ¶ 14, 19–21.

6. The influx of and widespread use of infringing and derivative copies of Plaintiff's Copyright on the exact same or substantially similar products led to a sharp drop in revenue. The sales of Plaintiff's products embodying the Copyright-in-Suit have dropped significantly and Plaintiff's market share has been illegally eroded. The infringing behavior of these Seller Aliases has diminished Plaintiff's copyright rights and resulted in loss of exclusivity and control of creative content. Plaintiff has not been able to realize the return of investment in the Copyright-in-Suit. Plaintiff has lost control over the rights in the Plaintiff's Copyright, lost Plaintiff's and Plaintiff's products reputation, associated goodwill of Plaintiff's Copyright, and ability to exploit the protected work. Plaintiff has also lost profit, market share, and sales volume. *See Id*. at ¶ ¶ 23–27.

7. Plaintiff has not entered a contract with or licensing agreement with Defendants for the Copyright-in-Suit. Defendants are not authorized sellers of products bearing or otherwise using Plaintiff's Copyright. *See Id*. at ¶ 28.

8. Defendants are partnerships, individuals, and/or unincorporated associations operating as fictitious seller aliases on online platforms who target sales to Pennsylvania residents by setting up and operating interactive "storefronts" under aliases via online retail website(s). Defendants target Pennsylvania consumers by advertising, offering to sell, and standing ready, willing and able to sell and ship Infringing Products to the United States, including Pennsylvania, under infringing and derivative copies of Plaintiff's Copyright. Based on the seller alias names and research of Defendants, Defendants likely reside and operate in the People's Republic of China or other foreign jurisdictions with lenient intellectual property enforcement systems. *See Id.* at ¶ ¶ 29–32.

9. Plaintiff is the true and correct owner of Plaintiff's Copyright. Plaintiff has complied in all respects with the Copyright Act of the United States and other laws governing copyright and secured the exclusive rights and privileges in and to Plaintiff's Copyright. Plaintiff's Copyright is an original work. Defendants infringed Plaintiff's exclusive copyright by creating infringing and/or derivative works, copying, displaying, advertising, and/or distributing works to the public utilizing or based upon Plaintiff's Copyright in violation of 17 U.S.C. § 106. Defendants' Infringing Products, Infringing Product listing pages, and/or Infringing Product packaging incorporate and copy Plaintiff's Copyright. Defendants' copying constitutes improper appropriation of Plaintiff's Copyright. Defendants had access to Plaintiff's Copyright. Defendants have been and are now actively infringing the Copyright-in-Suit in the State of Pennsylvania, in this judicial district, and other jurisdictions in the United States by displaying, advertising, selling, and/or offering to sell products utilizing and/or under derivative and/or infringing copies of the Copyright-in-Suit. Due to Defendants' infringing behavior as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's Copyright. *See* Plaintiff's Complaint at ¶ ¶ 72–82.

10. Defendants' conduct constitutes willful and direct copyright infringement. Defendants had actual or constructive knowledge of Plaintiff and/or Plaintiff's Copyright before and/or during Defendants' advertising, offering for sale, and sale of Infringing Products. *See Id*. at ¶ ¶ 82–85.

11. On April 6, 2026, this Court entered a Temporary Restraining Order, asset freeze, expedited discovery order, and Order to Show Cause (Dkt. No. 20, hereinafter "TRO Order"), finding: likelihood of success on the merits; irreparable harm to Plaintiff; that the balance of harms favored Plaintiff; that the public interest supported relief; and personal jurisdiction over

Defendants based on their deliberate, interactive targeting of Pennsylvania consumers. *See* TRO Order ¶ ¶ 1–9.

12. On April 20, 2026, Plaintiff properly served Defendants. *See* Dkt. No. 32.

13. On April 20, 2026, Plaintiff served its First Set of Requests for Admissions pursuant to the TRO Order. None of the Defaulting Defendants provided any responses. *See* Lei Decl. ¶¶ 2–3. Those unanswered Requests are deemed admitted as a matter of law under Fed. R. Civ. P. 36(a)(3).

14. On April 29, 2026, this Court held the Show Cause Hearing. Plaintiff appeared; no Defaulting Defendants appeared. The Court entered a Preliminary Injunction Order (Dkt. No. 54, hereinafter "PI Order"), again finding likelihood of success on the merits, irreparable harm, that the balance of harms favored Plaintiff, that the public interest supported the injunction, and personal jurisdiction over Defendants. *See* PI Order ¶ ¶ 1–11.

15. On May 15, 2026, the Clerk entered Default as to all Defaulting Defendants. *See* Dkt. No. 77.

## III. ARGUMENT

"In considering a motion for default judgment, a court must treat the allegations in the complaint as true." *Broadcast Music, Inc. v. George Moore Enterprises, Inc.*, 184 F. Supp. 3d 166, 169 (W.D. Pa. 2016). By their default, the Defaulting Defendants have admitted all well-pleaded allegations of the Complaint. Additionally, because Defaulting Defendants failed to respond to Plaintiff's First Set of Requests for Admissions, those Requests are deemed admitted under Fed. R. Civ. P. 36(a)(3). The deemed admissions independently bolster established facts bearing on personal jurisdiction, liability, and willfulness, as detailed below.

In considering a Motion for Default Judgment, the Court has discretion and may consider factors, including "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). Each factor weighs for Plaintiff. Plaintiff is prejudiced by ongoing infringement and continued market erosion; Defaulting Defendants have no apparent litigable defense given their virtually identical copying and complete failure to appear; and Defaulting Defendants' total non-participation and use of anonymity reflects culpable disregard for this Court's authority.

**a. Plaintiff's Complaint States a Proper Claim for Relief.**

The Complaint alleges sufficient facts to establish copyright infringement under 17 U.S.C. § 101 et seq.

Plaintiff owns Copyright Registration No. VA 2-444-503, duly issued by the United States Copyright Office and in full force and effect. *See* Complaint at ¶ ¶ 7, 17, 71–73; Exhibit A thereto. Valid registration is *prima facie* evidence of ownership and validity. 17 U.S.C. § 410(c). Defaulting Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 by reproducing, creating derivative works from, displaying, and distributing infringing and/or derivative copies of Plaintiff's Copyright in connection with the Infringing Products. *See* Complaint at ¶ ¶ 75–82. This Court already found that Defaulting Defendants have copied constituent elements of Plaintiff's Copyright that are original and that Plaintiff's Copyright is used without authorization. *See* TRO Order ¶ 3; PI Order ¶ 4.

The Complaint also states a claim for vicarious and contributory copyright infringement, establishing that Defaulting Defendants knowingly induced, aided, and abetted the illegal

reproduction and distribution of Plaintiff's Copyright, with the right, ability, and financial interest to supervise and profit from that conduct. *See* Complaint at ¶ ¶ 87–91. Taken as true, these allegations establish liability as a matter of law.

**b. Subject Matter Jurisdiction Is Proper in This Court.**

This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), which grants original jurisdiction over "any civil action arising under any Act of Congress relating to . . . copyrights." Plaintiff's claims arise under the Copyright Act, 17 U.S.C. § 101 et. seq., specifically alleging direct, vicarious, and/or contributory infringement of federally registered copyrights under 17 U.S.C. § 501. *See* Complaint at ¶ ¶ 62-64. This Court has expressly found subject matter jurisdiction proper at both the TRO and PI stages. *See* TRO Order ¶ 8; PI Order ¶ 10.

**c. Personal Jurisdiction Is Proper Over Each Defaulting Defendant.**

Personal jurisdiction over each Defaulting Defendant is established on three independent, reinforcing grounds: (1) Defendants' well-pleaded admissions by default, which establish affirmative targeting of Pennsylvania through fully interactive, purely commercial storefronts; (2) Defendants' deemed admissions to Plaintiff's Requests for Admissions, including an admission of actual sales to a Pennsylvania purchaser; and (3) Rule 4(k)(2) as an independent backstop, given Defendants' status as foreign entities not subject to any state's general jurisdiction. This Court has also already twice expressly found personal jurisdiction satisfied — at the TRO stage (Dkt. No. 20) and again at the PI stage after adversarial notice to all Defendants (Dkt. No. 54).

<u>(1) Plaintiff's Well-Pleaded Allegations Establish Affirmative Targeting of Pennsylvania.</u>

"Pennsylvania's long-arm statute permits courts to exercise personal jurisdiction over nonresident defendants 'to the fullest extent allowed under the Constitution of the United States' and 'based on the most minimum contact with this Commonwealth allowed under the Constitution.'" *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208 (3d Cir. 2014) (quoting 42 Pa. Cons. Stat. Ann. § 5322(b)). "[Zippo] has become a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site." *Toys "R" Us, Inc. v. Step Two*, S.A., 318 F.3d 446, 452 (3d Cir. 2003). When analyzing Internet commerce cases, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). "This sliding scale ranges from situations where a defendant uses an interactive commercial website to actively transact business with residents of the forum state (personal jurisdiction exists) to situations where a passive website merely provides information that is accessible to users in the forum state (personal jurisdiction does not exist)." *Ackourey*, 573 F. App'x 208; *See Zippo,* 952 F. Supp. at 1124. "To determine whether personal jurisdiction exists for situations between these extremes, we examine 'the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.'" *Id.*; *See Zippo,* 952 F. Supp. at 1124; *See also Toys "R" Us*, 318 F.3d at 452.

By their default, Defaulting Defendants have admitted the well-pleaded jurisdictional allegations of the Complaint. Those allegations establish that Defaulting Defendants operate fully interactive, purely commercial storefronts at the highest end of the *Zippo* sliding scale. Defendants' e-commerce stores are in English, accept U.S. Dollars, affirmatively list Pennsylvania as a sale and shipping destination, and are designed for Pennsylvania residents to view Infringing Products, communicate with Defaulting Defendants, place orders from Defaulting Defendants, and receive

shipments at Pennsylvania addresses. *See* Complaint ¶ ¶ 30–31, 33–34, 64–65; Exhibits B.1–B.3 thereto. These are not passive informational websites - they are purely commercial storefronts whose sole purpose is to consummate transactions with U.S. consumers, including Pennsylvania residents.

Critically, each Defaulting Defendant affirmatively chose Pennsylvania as a target for sales and shipment, despite being from a foreign country. Defaulting Defendants could have excluded the United States or Pennsylvania as a sale and shipment destination, but willfully chose not to. This affirmative, autonomous choice is the hallmark of purposeful availment. *See Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015) ("In creating their online stores, defendants affirmatively selected a shipping template to ship counterfeit Monster Energy Products to United States and Illinois residents…As a result, defendants expressly elected to do business with the residents of all fifty states, including Illinois.") Defaulting Defendants willfully and voluntarily chose to exploit the United States, including Pennsylvania, market, such that it should be no surprise to them to be haled into a United States federal district court. Notwithstanding, as discussed below, Defendants' deemed admissions establish that actual sales to Pennsylvania did occur, further bolstering personal jurisdiction and independently confirming such.

(2) Defaulting Defendants' Deemed Admissions Independently Confirm Jurisdiction, Including Actual Pennsylvania Sales.

On April 20, 2026, Plaintiff served its First Set of Requests for Admissions on each Defendant pursuant to this Court's Order (ECF 20). None of the Defaulting Defendants answered. All unanswered Requests are therefore deemed admitted under Fed. R. Civ. P. 36(a)(3). *See* Lei

Decl. ¶ 1(a)-(b). These admissions independently establish every element of specific personal jurisdiction.

Each Defaulting Defendant is deemed to have admitted:

> (Req. 2) - Admit that You knowingly created and maintained one or more product listings for the Accused Products on Amazon.com, Walmart, or Temu, a U.S.-based online marketplace.
>
> (Req. 3) - Admit that the Amazon, Walmart, or Temu platform You operate on allows You to choose whether or not to offer Your products for sale or shipment in the United States.
>
> (Req. 4) - Admit that the Amazon, Walmart, or Temu platform You operate on allows You to choose whether or not to offer Your products for sale or shipment in the State of Pennsylvania.
>
> (Req. 5) - Admit that You knowingly enrolled the Accused Products in Amazon's Fulfillment by Amazon ("FBA") program or similar program for Walmart or Temu.
>
> (Req. 6) - Admit that, at the time You enrolled the Accused Products in Amazon's Fulfillment by Amazon ("FBA") program, or similar program for Walmart or Temu, You knew or reasonably should have known that such program(s) would allow the Accused Products to be offered for sale and shipped to residents of the United States, including residents of the State of Pennsylvania.
>
> (Req. 7) - Admit that a resident of the State of Pennsylvania had the ability to view the Accused Product, purchase the Accused Product, and ship the Accused Product to a shipping address in the State of Pennsylvania.
>
> (Req. 8) - Admit that Defendant's E-commerce Store(s) did not exclude sale and shipping of the Accused Product to the State of Pennsylvania.
>
> (Req. 9) - Admit that You intended to sell and ship Accused Products to the United States, including Pennsylvania, for monetary value when operating Defendant's E-commerce Store(s).
>
> (Req. 11) - Admit that You made sales of Accused Products to a purchaser with a State of Pennsylvania shipping address.
>
> *See* Lei Decl. ¶ 1(c).

These admissions are dispositive. Defaulting Defendants did not passively allow Pennsylvania sales to occur - they affirmatively enrolled products in FBA or other programs, knowing it would reach Pennsylvania, chose not to exclude Pennsylvania, intended to sell there, and based on such admissions, actually sold to a Pennsylvania purchaser.

<u>(3) Rule 4(k)(2) Provides an Independent Basis for Jurisdiction.</u>

Even if specific jurisdiction over Pennsylvania were disputed, Rule 4(k)(2) independently establishes personal jurisdiction. Rule 4(k)(2) "was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal laws." *Merial Ltd. v. Cipla, Ltd*., 681 F.3d 1283, 1293-94 (Fed. Cir. 2012) (citing Synthes, 563 F.3d at 1295-95; advisory committee notes to the 1993 amendment establishing Rule 4(k)(2)). In full, Rule 4(k)(2) provides: "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

First, as discussed above, Plaintiff's claims arise under federal copyright law, 17 U.S.C. § 501, within this Court's original jurisdiction under 28 U.S.C. § 1338(a). Second, Defendants are foreign entities operating out of China or other foreign jurisdictions. *See* Complaint at ¶ 31; Exhibit C thereto. Based on the record, Defaulting Defendants are not subject to jurisdiction in any state's courts of general jurisdiction. Indeed, Rule 4(k)(2) is "particularly well suited to website cases" involving foreign defendants who "purposefully avails itself of the protection of U.S. law by directing activity towards the country at large, but, because contact is divided by 50, does not reach a jurisdictional level of contact with any individual state." *Silver Ring Splint Co. v. Digispint, Inc*., Civ. No. 306-CV-00065, 2007 U.S. Dist. LEXIS 25522, 2007 WL 1052488, at *3 (W.D. Va. Apr. 5, 2007). "[I]t would be unjust to escape jurisdiction in U.S. courts for violations of U.S. law by those who seek its protection in other contexts." *Id*. To defeat Rule 4(k)(2), a defendant must

identify a specific state where jurisdiction would have been proper at the time of filing, regardless of consent. Defaulting Defendants have defaulted and made no such showing.

Third, exercising jurisdiction is consistent with the Constitution. Under Rule 4(k)(2), the forum is the United States as a whole and due process is assessed based on Defendants' U.S. contacts. In deciding whether due process permits the exercise of personal jurisdiction under Rule 4(k)(2), courts consider whether "(1) defendant has purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009).

All three elements are satisfied: Defaulting Defendants created English-language, U.S.-facing marketplace storefronts accepting USD, enrolled products in FBA or otherwise offered nationwide U.S. delivery, and specifically chose not to restrict sales - affirmatively targeting the entire U.S. market for monetary gain. All of Plaintiff's claims arise directly from that U.S.-targeted infringing activity. Further, jurisdiction is reasonable, where the United States has a paramount interest in adjudicating the enforcement of a U.S.-registered copyright against foreign entities exploiting the U.S. marketplace, and no foreign forum can provide Plaintiff adequate relief.

Accordingly, personal jurisdiction over each Defaulting Defendant is proper on multiple independent grounds.

## IV. PERMANENT INJUNCTION

Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing the Copyright-in-Suit. To obtain permanent injunctive relief, a movant must show: "(1) it will suffer irreparable injury, (2) no remedy available at law could adequately

remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest." *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019).

This Court has already found all four elements satisfied twice. *See* TRO Order (Dkt. No. 20); PI Order (Dkt. No. 54). Nothing has changed to alter those findings. *See Evony, LLC v. Holland*, No. 2:11-CV-00064, 2011 WL 1230405, at *7 (W.D. Pa. Mar. 31, 2011) ("In this case, Plaintiffs have achieved 'actual success on the merits' through the admission of liability arising from Defendant's default. Furthermore, the Verified Complaint establishes that Defendant unlawfully sells and distributes copyrighted and trademarked material of the Plaintiffs. Nothing in the facts before the Court indicates that Defendant has ceased this infringing activity; thus, a permanent injunction is warranted in this case on all claims of the Verified Complaint.")

First, Plaintiff will be irreparably harmed because Defaulting Defendants' actions, if allowed to persist, will continue to cause Plaintiff to suffer harm. Plaintiff has already expended substantial time and money in advertising the Copyright-in-Suit, and Plaintiff has lost significant market share and sales due to Defendants' infringing activity. Further, Plaintiff faces loss of market share, reputation, goodwill, creative content, exclusivity, and an inability to realize a return on investment. Defendants will likely continue to erode Plaintiff's Copyright-in-Suit market share through direct competition on virtually identical goods. Here, Defaulting Defendants have and will likely continue to sell and/or offer to sell Infringing Products to the detriment of Plaintiff. Defaulting Defendants will collect and keep the proceeds, and thus, Plaintiff will lose the benefit of his copyright.

Second, there is no adequate remedy at law absent permanent injunctive relief. Plaintiff would be forced to repeatedly file suit any time against the Defaulting Defendants—who have

shown disregard for their legal obligations and the jurisdiction of this Court—when they infringe Plaintiff's copyright rights in the future. Here, Plaintiff's lack of control over Defaulting Defendants' unauthorized use of his copyright weighs in favor of granting permanent injunctive relief. Indeed, permanent injunctive relief is the only adequate remedy to prevent the continued threat of infringement and irreparable harm.

Third, the balance of hardships weighs strongly in Plaintiff's favor as Plaintiff is threatened with significant irreparable injury if a permanent injunction is not issued. Defaulting Defendants' actions have resulted in irreparable harm to Plaintiff. In fact, Defaulting Defendants do not face hardship from Plaintiff's permanent injunctive relief because "one who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Lawler Manufacturing Co. v. Bradley Corp*., CAUSE NO. IP 98-1660-C M/S, 2000 U.S. Dist. LEXIS 14197, at *99 (S.D. Ind. Apr. 26, 2000) (citations omitted). Unless enjoined by this Court, Plaintiff will suffer future irreparable harm as a direct result of Defaulting Defendants' unlawful activities.

Fourth, the public will benefit from this injunction because the public interest is advanced by enforcing faithful compliance with the laws of the United States and the State of Pennsylvania. A permanent injunction in this case is appropriate because the public interest lies in favor of upholding property interests in copyrights and preventing infringement. Here, there is no public interest in allowing Defaulting Defendants to infringe the Copyright-in-Suit and sell Infringing Products to the detriment of Plaintiff's dealers, retailers, and consumers. To the contrary, the public benefits from legitimate, non-infringing products and from faithful enforcement of federal copyright law.

## V. DAMAGES

Plaintiff seeks an award of $45,000.00. Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c), a plaintiff in a case involving the use of a copyright infringement may elect to receive "a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Further, if the infringement "was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

"Statutory damages serve the dual purposes of compensation and deterrence: they compensate the plaintiff for the infringement of its copyrights; and they deter future infringements by punishing the defendant for its actions." *Broad. Music, Inc. v. George Moore Enters*., 184 F. Supp. 3d 166, 171 (W.D. Pa. 2016) (citations omitted). "[C]ourts should consider: '(1) expenses saved and profits reaped by the infringer; (2) revenues lost by the plaintiff; (3) the strong public interest in insuring the integrity of the copyright laws; and (4) whether the infringement was willful and knowing or innocent and accidental.'" *Id*. at 171-72.

Here, the potential lost profits could be calculated by the outstanding number of Infringing Products sold by Defaulting Defendants. However, the scope and timeline of Defaulting Defendants' infringing activities are largely unknown, including the timeline of sales of Infringing Products and other ASINs or product IDs used for such activity. Further, it is unclear if Defaulting Defendants have utilized other trade routes or sellers pages for its Infringing Products, whether on different platforms or under different aliases. As a result, calculating lost licensing fees for actual profits is difficult. Further, Plaintiff's loss of market value and goodwill is significant; however, it is difficult to calculate. Because Defaulting Defendants' Infringing Products were virtually identical to goods offered by Plaintiff, and utilized virtually identical, infringing copies of Plaintiff's Copyright - and sold through the same channels of trade as Plaintiff - consumers now

have confusion and/or low expectation of Plaintiff's quality and products and the goodwill of Plaintiff's Copyright is forever tarnished. Also, such illicit actions cause significant loss of market share and loss of creative expression. Moreover, the flooding of the market with Infringing Products by Defaulting Defendants deterred any potential, reputable licensing fee with third parties. Finally, the extensive money and time spent in advertising by Plaintiff was wasted, in part, because Plaintiff did not realize a full return on investment due to Defaulting Defendants' stores. As such, significant difficulty exists for establishing an accurate actual damage award.

Next, the circumstances of infringement lean in favor of Plaintiff. Clearly, Defaulting Defendants did not engage in any negotiations for licensing of Plaintiff's Copyright nor perform due diligence before their infringing activities. Rather, due to the popularity of Plaintiff's Copyright and the products sold thereunder, Defaulting Defendants proceeded to sell nearly identical Infringing Products using identical copies of Plaintiff's Copyright. The Defaulting Defendants are made-up, seller aliases with no reliable, identifiable individual or entity. Defaulting Defendants prefer and are designed to remain anonymous due to their knowledge of wrongdoing. Moreover, Defaulting Defendants have not even appeared in this Court to attempt to justify their infringing activities.

Further, statutory damages will act as a proper deterrent to future copyright infringements. With actual damages alone, Defaulting Defendants are aware of their ability to create multiple-seller aliases, sell infringing products, and only risk the chance of being caught by Plaintiff. With statutory damages, Defaulting Defendants and other third parties will be properly deterred from engaging in infringing activities. Here, as discussed in much detail previously, Defaulting Defendants' products are virtually identical and Defaulting Defendants utilize virtually identical copies of Plaintiff's Copyright, where Defaulting Defendants did not even try to independently create their own works. As such, statutory damages are necessary to prevent future 'quick and easy'

infringement networks. *See Bartels v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, No. 23 C 3755, 2024 U.S. Dist. LEXIS 57029, at *11 (N.D. Ill. Mar. 29, 2024) ("[S]tatutory damages serve as a deterrent to the design team's laissez-faire approach to 'finding inspiration.'")

Finally, the infringement was willful — established independently through Defaulting Defendants' default, their deemed admissions, and the virtually identical nature of the copying. By failing to respond to the Requests for Admissions, each Defaulting Defendant has admitted:

> (Req. 15) - Admit that You knew or were otherwise constructively aware of Plaintiff's Copyright while designing, manufacturing, sourcing, offering for sale, or selling Defendant's Accused Products.
> (Req. 16) - Admit that You did not engage in any independent research, intellectual property clearance search, or other prior art search, including at the USPTO or Copyright Office, before offering for sale the Accused Product(s).
> *See* Lei Decl. ¶ 1(c).

These admissions independently confirm willfulness: Defendants had constructive knowledge of Plaintiff's Copyright and conducted zero due diligence before copying them virtually identically. This is not inadvertent infringement. Even absent those admissions, willfulness is compelled by the virtually identical copying, the absence of any independent creation, the intentional use of fictitious aliases and false registration information to evade detection, and the complete failure to appear in this action. *See* Complaint ¶ ¶ 33–35, 40–41, 44–45, 82.

Based on the foregoing, Plaintiff requests statutory damages for willful copyright infringement of Plaintiff's Copyright in the amount of $45,000.00. This request is reasonable based on the willful nature, including the virtually identical nature of Defaulting Defendants' copying, the intentionally anonymous nature of Defaulting Defendants, the longevity of publication of Plaintiff's Copyright, and the effectiveness it will have on deterring Defaulting Defendants and others from infringing Plaintiff's rights.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant a default judgment against the Defaulting Defendants and enter Plaintiff's proposed default judgment order.

DATED June 25, 2026

Respectfully submitted,

/s/ Ge (Linda) Lei

Ge (Linda) Lei
Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFF*